In re SYCOM ENTERPRISES, L.P., Debtor.

No. 01–60830 RTL.

United States Bankruptcy Court, D. New Jersey.

June 21, 2004.

Mitchell Malzberg, Stephen Mitnick, P.C., Frenchtown, NJ, for Peggy Stalford, Trustee.

Joel R. Glucksman, Scarinci & Hollenbeck, LLC, Secaucus, NJ, for Passaic Valley Sewerage Commission.

Marian A. Kornilowicz, Cohen, Seglias, Pallas, Greenhall & Furman, P.C., Philadelphia, PA, for D. Falasca Plumbing, Heating & Cooling, Inc.

## OPINION

RAYMOND T. LYONS, Bankruptcy Judge.

This motion concerns various contracts among the Debtor, the Passaic Valley Sewerage Commission ("PVSC"), Public Service Electric & Gas Company ("PSE & G"), Onsite Energy Corporation ("Onsite"), and TRC Energy Services, L.L.C. The Trustee seeks authorization to assume and assign the Debtor's contracts relating to energy savings projects pursuant to a Global Settlement.

D. Falasca Plumbing, Heating & Cooling, Inc. ("Falasca") objects to a provision of the Global Settlement that releases PVSC from any payment obligations to the Debtor under one of the contracts. Falasca claims a security interest in the pay-

ments to become due from PVSC that the Debtor previously assigned to Onsite.

The original parties to a contact may modify it to the detriment of an assignee of payment where the right to payment has not been fully earned by performance. N.J.S.A. § 12A:9–405. In this case, PVSC and the Trustee both maintain that the right to payment has not been earned by performance. Furthermore, the Debtor, having ceased business, no longer has the ability to perform. Thus, the Trustee and PVSC may modify the contract to release PVSC from further payment obligations. Falasca's objection to the assumption and assignment by the Trustee is overruled. The Trustee is authorized to assume and assign the contracts pursuant to the Global Settlement.

### Statement of Facts

#### A. Debtor's Business Operations

The Debtor, Sycom Enterprises, L.P. ("Sycom"), is an energy saving conservation company. More precisely, the nature of Sycom's business involves contracting with utility providers and energy consumers to structure and implement energy savings programs to reduce consumers' power consumption. Sycom determined the amount of energy saved by customers through the use of its energy-savings equipment, which in turn permitted the customers to receive energy-savings payments from public utilities. More than half of its customers are state, county and local governmental units, many of which have issued bonds supported by the revenues from energy-saving payments received under these programs.

#### B. Contracts Concerning the PVSC Energy Savings Projects

On June 20, 1996, PVSC and Sycom entered into an energy savings agreement. Sycom was to establish a baseline for measuring PVSC's energy savings and, once implemented, Sycom would monitor the equipment and verify the anticipated savings. Sycom guaranteed that PVSC would receive rebates from PSE & G for the energy savings. Subsequently, Sycom and PVSC entered into several sub-agreements known as "Technical Terms."[1] Technical Terms # 1 (Project No. 2103–005) dated September 25, 1996, provided that Sycom would install measurement equipment and measure the energy savings of PVSC's oxygenation mixers facility. Sycom was to download this information on a monthly basis and prepare an invoice to acquire revenue from PSE & G to thereafter be passed on to the customer.

Simultaneously, Sycom entered into numerous contracts with PSE & G and TRC Energy Services, L.L.C. ("TRC") under which Sycom agreed to structure and implement energy savings programs to reduce power consumption at PVSC's Newark, New Jersey facilities. An entity known as Onsite Energy Corporation ("Onsite"), an energy services company, was also a party to some of these agreements. The relationships among Sycom, PVSC, PSE & G, TRC and Onsite were therefore uniquely interconnected—consumers hoped to achieve energy savings, for which PSE & G would make payments to them, and PSE & G hoped to see more efficient energy usage, which would benefit its long-term business planning. However,

1. Technical Terms # 1, dated September 25, 1996, provided for an oxygenation mixers facility; Technical Terms # 2, dated September 25, 1996, provided for low-energy lamps and ballasts; and Technical Terms # 3, dated December 19, 1996, provided for variable speed drivers for waste-activated sludge pumps. On December 16, 1998, PVSC entered into an additional sub-agreement, Technical Terms # 4, with Onsite. This agreement provided for a centrifuge thickening project.

Sycom's insolvency eventually led to these parties alleging various breach of contract claims against each other.

## C. Falasca's Dealings With Onsite

Falasca and Onsite entered into two subcontracts where Falasca agreed to perform mechanical work being provided by Onsite (collectively, the "Falasca Subcontracts"). Under the first subcontract, entered into on September 18, 1998, Falasca agreed to perform mechanical work for the Atlantic County Energy Savings Project in the amount of $2,904,787.64. The second subcontract, entered into on March 15, 1999, provided that Falasca was to perform mechanical work with respect to energy services being provided by Onsite to the Board of Education of the Hudson County Schools of Technology in the amount of $718,000.

As security for Onsite's performance under the Falasca subcontracts, Onsite assigned $174,818 in contract revenues from Technical Terms # 1 to Falasca.[2] Around this time, Sycom executed an Assignment of Rights pursuant to which it assigned to Onsite:

> ... all of the right, title and interest of [Sycom] in and to the first $174,818.00 in fee-only receivables that might be paid by [PVSC] under a contract between [Sycom] and the PVSC dated September 25, 1996 ... for labor, materials, and/or related services at an energy efficiency project installed or being installed at facilities owned by PVSC.

Thus, Sycom assigned part of its rights to accounts receivable under the Technical Terms # 1 contract to Onsite which, in turn, assigned the same receivable to Falasca as security. Falasca has notified

PVSC of its interest in the payment that might be owed by PVSC under Technical Terms # 1 and requested that PVSC direct any payment to Falasca.

## D. Debtor's Bankruptcy

On September 21, 2001, Sycom filed for Chapter 11 relief. On March 5, 2002, the case was converted to a liquidation proceeding under Chapter 7 and Peggy Stalford was appointed Trustee. Sycom's insolvency led to the parties alleging various breach of contract claims against each other. PVSC has filed a proof of claim in Sycom's bankruptcy case.

Sycom's assets consisted mostly of executory customer agreements and utility agreements.[3] Consequently, the Trustee has been marketing the customer agreements for sale. She reviewed the contracts between Sycom and PVSC in an effort to determine whether the contracts had value to the estate. The Trustee initially determined that the projects had no value to the Estate because of claims asserted for breach of contract by PVSC. In light of these breach claims, the Trustee was unable to procure any interested purchasers for the project. However, the Trustee was successful in selling many of the remaining contracts, resulting in a substantial benefit for the creditors of the estate.

## E. Current Litigation in District Court

Technical Terms # 1 is the subject of an enormously complex construction litigation, commenced 1½ years ago in United States District Court for the District of New Jersey. There are presently seven parties in the litigation, and new parties were recently added. Due to this recent

---

2. The assignment was to terminate upon fulfillment of Onsite's obligations to Falasca under the Falasca Subcontracts.

3. The estate's potential assets included 176 energy savings contracts, deposits, accounts receivables, as well as security deposits.

joinder and the technological nature of the issues, discovery has only recently begun, and trial is years away.

### F. Trustee's Position

Sycom's bankruptcy makes its future performance under the agreement impossible. There is no value in the Technical Terms # 1 contract in light of the damage claims asserted. After diligent inquiry, the Trustee has been unable to locate any other party who would be willing to assume the estate's rights and responsibilities under the PVSC energy savings agreements. The parties therefore decided that it was in their best interests to seek an amicable resolution of these claims in an effort to avoid the expense and uncertainty of further proceedings. Consequently, the parties entered into a Global Settlement. The complete terms of this Settlement are exceedingly complex. In general, the proposed settlement provides for the following:

a. *As between PVSC and the Trustee.* The Trustee will: (i) assume and assign and/or quitclaim to PVSC the Estate's interests in the PVSC Energy Savings Agreements in which the Estate has an interest within the meaning of Code § 541, free and clear of liens and claims, and (ii) release all claims against PVSC. PVSC will: (i) cure monetary defaults by the Estate under the PVSC Energy Savings Agreements, (ii) pay the Estate $3,500.00, and (iii) release all claims against the Estate.

b. *As Between PVSC and Onsite.* Onsite will: (i) assign and/or quitclaim to PVSC its interests in the PVSC Energy Savings Agreements, free and clear of liens and claims, and (ii) release all claims against the Trustee, Debtor, the Estate and/or PVSC except for PVSC's obligation for the 20% Fee Payment due under the PVSC Energy Savings Agreement known as "Technical Terms # 4." PVSC will: (i) pay Onsite $25,000.00, but only to the extent that PVSC receives money from PSE & G under the PVSC Energy Savings Agreement known as "Technical Terms # 3," including any lump sum buy-out, and (ii) release Onsite from any "true-up" requirements under Technical Terms # 4.

c. *As Between PVSC and PSE & G.* PSE & G will: (i) consent to the Trustee's and to Onsite's assignment and/or quitclaim to PVSC of the PVSC Energy Savings Agreements, (ii) issue the DOCO letter for Technical Terms # 4, (iii) consent to PVSC becoming a Self-Sponsor under the PVSC Energy Savings Projects in place of Sycom and Onsite, and (iv) not assert claims for past overpayments or for past or future Replacement Capacity Costs under the PVSC Energy Savings Projects. PVSC will: (i) pay PSE & G $12,000.00 for claims it asserts under the PVSC Energy Savings Projects against the Estate, Onsite, and/or PVSC, including sums claimed for overpayments or Replacement Capacity Costs but not including liquidated damages PSE & G already received and (ii) be responsible for monitoring and verification ("M & V") specific costs incurred by PSE & G beginning with the 2003 calendar year. PSE & G, PVSC, Onsite, and the Trustee will also enter into the Consent to Assignment of Standard Offer Two Energy Savings Agreements.

d. *As Between PVSC and TRC.* TRC will: (i) release claims it has against the Estate and/or PVSC under the PVSC Energy Savings Agreements, and (ii) agree to the Trustee's and Onsite's assignment and/or quitclaim to PVSC of the PVSC Energy Savings Agreements. PVSC will: (i) pay TRC $6,012.00 in settlement of TRC's claims to date against the Estate and/or PVSC under the PVSC Energy Savings Agreements,

but only to the extent that PVSC receives money from PSE & G under Technical Terms # 3, including any lump sum buy-out, and (ii) allow submission of monthly, rather than annual, billing by TRC for M & V work on Technical Terms # 4.

This settlement requires the Trustee to assume the contracts and assign them back to PVSC to preserve their standing in the Standard Offering Program with PSE & G. A condition of the assignment however, is that PVSC waive its claims against the estate. The Trustee believes that the Global Settlement eliminates significant damage claims against the estate. Accordingly, the Trustee seeks an order authorizing assumption and assignment of various contracts to PVSC free and clear of liens, claims, and encumbrances pursuant to § 363 and § 365. The Trustee also seeks approval of the Global Settlement among Sycom, PVSC, and the other third parties.

### G. Falasca's Position

Falasca seeks resolution of the following issues: 1) whether the Trustee proposes to assign to PVSC the same payments the Debtor has assigned to Onsite that, in turn, were pledged to Falasca (and if so, is it permissible or proper); 2) whether the Technical Terms # 1 contract is being assigned to PVSC free and clear of Falasca's security interest (and if so, whether it would be improper), and 3) what, if any, impact this would have on Falasca's rights

under the Onsite Assignment Agreement. In response, the Trustee and PVSC clarified that, indeed, their intention is to absolve PVSC of any payment obligation under Technical Terms # 1.

Falasca objects to the portion of the Global Settlement dealing with Technical Terms # 1 because it releases PVSC's obligation to pay money due. Falasca alleges that it holds a secured lien on PVSC's payment obligations under Technical Terms # 1. According to Falasca, the assignment by Sycom to Onsite of receivables due from PVSC under Technical Terms # 1 was an absolute assignment, and not intended as a security interest.[4] Consequently, Falasca argues, Sycom no longer has any rights, title, and interest in this contract right, and cannot assign it or use it to set off claims against it. Therefore, Falasca requests that if the court approves the assumption, the assignment must be subject to Falasca's interest.

The Trustee believes that Falasca's objection is without merit because: 1) if Technical Terms # 1 was rejected, Falasca would not receive any monies on the project anyway; and 2) Falasca's secured interest was not with Sycom. Specifically, the Trustee argues that it is not seeking to impede Falasca's claim or entitlement to monies that Falasca may have against Onsite. Rather, the Trustee is assigning the estate's rights to the PVSC projects, which includes Technical Terms # 1, to PVSC. Since the Trustee would have rejected this

---

**4.** The court raised the issue of whether UCC Article 9 applied to the assignment from Sycom to Onsite, and whether the Trustee could avoid the assignment by its "strong-arm" power under 11 U.S.C. § 544. The parties filed supplemental briefs. In its supplemental filings, PVSC claims that Onsite should have perfected its security interest by filing a financing statement when it took the assignment of the Sycom account receivable because Article 9 covers assignments of accounts. Thus, PVSC argues, the Trustee

could therefore avoid the unperfected interest pursuant to § 544. It is Falasca's position that even if Article 9 applied to the assignment by Sycom to Onsite, the assignment was merely an isolated and insignificant transaction and was therefore perfected upon attachment pursuant to U.C.C. § 9–309. In light of the decision herein, and the failure of the Trustee to bring an action to avoid the assignment from Sycom to Onsite, the court will not reach this issue.

agreement but for the settlement, Sycom would not be entitled to any contract revenues even absent the Global Settlement. Thus, the Trustee asserts, Onsite would not be entitled to any revenues, and such revenues would never be paid over to Falasca.

PVSC supports the Trustee's motion for approval of the Global Settlement and the proposed assumption and assignment of PVSC's contracts. PVSC argues that the assignment from Onsite to Falasca was not absolute and merely provided a security interest. In addition, PVSC argues that because the Debtor is incapable of performing Technical Terms # 1, this precludes any funds flowing from PVSC to Falasca. Therefore, PVSC maintains, it is ultimately irrelevant whether Sycom could modify the contract to give up a claim that was part of the settlement.

## I. Jurisdiction

The court has jurisdiction to consider the Trustee's motion under 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M), (N), and (O).

## II. Modification of Assigned Contracts

Under the Global Settlement, the Trustee will release PVSC from any future payment obligation. Falasca protests. As a secured creditor with a lien on the payments to become due from PVSC, Falasca asserts that its rights may not be altered without its consent. PVSC and the Trustee counter that the parties to a contract may modify it without the consent of an assignee.

Falasca claims a security interest in the first $174,818.00 in fee-only receivables

that might be due from PVSC to Sycom that were assigned to Onsite. Article 9 of the Uniform Commercial Code applies to secured transactions. N.J.S.A. § 12A:9–101 *et seq.*

The Uniform Commercial Code allows modification of assigned contracts. N.J.S.A. § 12A:9–405, entitled **Modification of Assigned Contract,** provides in pertinent part:

(a) Effect of modification on assignee. A modification or substitution of an assigned contract is effective against an assignee if made in good faith. The assignee acquires corresponding rights under the modified or substituted agreement. The assignment may provide that the modification or substitution is a breach of contract by the assignor....

(b) Applicability of subsection (a). Subsection (a) applies to the extent that:

(1) the right to payment or a part thereof under an assigned contract has not been fully earned by performance; or

(2) The right to payment or a part thereof under an assigned contract has been fully earned by performance and the account debtor has not received notification of the assignment under 12A:9–406(a).

Thus, an account debtor or assignor may modify a contract to the detriment of an assignee provided such modification is made in good faith and the right to payment has not been fully earned.[5] Nevertheless, § 9–405 is not without protection for the assignee because it limits the effectiveness of modifications to those made in good faith and recognizes that the modifi-

---

**5.** Only one case has addressed whether a modification or substitution was made in good faith and in accordance with commercially reasonable standards. JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE,

§ 34–5, (4th ed.1995), discussing *Producers Cotton Oil Co. v. Amstar Corp.,* 197 Cal. App.3d 638, 242 Cal.Rptr. 914 (1988) (court found modification not commercially reasonable and motivated by bad faith where modifi-

cation may be a breach of the assignor's agreement with the assignee. U.C.C. § 9–405(a), cmt. 2.

> The ability of account debtors and assignees to modify assigned contracts can be important, especially in the case of government contracts and complex commercial transactions (e.g., construction contracts) with respect to which modifications are customary.

*Id.* Certainly Technical Term# 1 is the type of complex commercial transaction envisioned by the comments to U.C.C. § 9–405.

█ The estate's entry into the Global Settlement is clearly contemplated in good faith and demonstrates sound business judgment. The record is barren of any suggestion that the Trustee's actions are motivated by bad faith. To the contrary, the estate's creditors will be far better served by the Global Settlement because it reduces the estate's liability while simultaneously increasing its assets. In addition, the Settlement prevents the Trustee and the estate from having to expend substantial resources in litigating the contract disputes between Sycom and the third parties.

Falasca claims that PVSC is not acting in good faith because Falasca notified PVSC of its lien on the payments due under Technical Terms # 1 and PVSC acknowledged such notice. Falasca claims that PVSC excluded Falasca from the negotiations of the Global Settlement indicating a lack of good faith. However, Falasca has no right to participate in the negotiations, and the mere exclusion of Falasca, without more, does not constitute bad faith.

With respect to the performance prong, the estate is incapable of performing Technical Terms # 1. Both parties to Technical Term # 1 agree that payment has not

been earned by performance. The Debtor's inability to perform precludes any funds flowing to the estate from PVSC, and thereafter to Onsite, and finally Falasca. Moreover, Onsite, as assignee, is a party to the Global Settlement and is therefore free to release PVSC's obligation. Falasca is merely a secured party to Onsite's interest as to the receivable. While the modification may constitute a breach of Onsite's agreement with Falasca, the assignment is nevertheless effective because it was made in good faith and the right to payment has not been earned by performance.

### Conclusion

The Trustee, PVSC, and Onsite may modify Technical Terms # 1 and, in accordance with N.J.S.A. § 12A:9–405, such modification is effective against Falasca. The Global Settlement is approved, and the Trustee is authorized to assume the contracts and assign them to PVSC free and clear of interests.

cation was account debtor's last ditch effort to avoid liability).